IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEMETRIUS DONNI HOWARD,**<br><br>Petitioner,<br><br>v.<br><br>**PAUL COPENHAVER, WARDEN,**<br><br>Respondent. | Case No. 1:14-cv-00373-LJO-MJS<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2241. Petitioner presents several challenges to a disciplinary proceeding leading to the loss of good conduct time.

**I.      JURISDICTION**

    **A.      Subject Matter Jurisdiction**

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Although a federal prisoner who challenges the validity or constitutionality of his conviction must file

1

a petition for writ of habeas corpus under 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

Petitioner's claims arise out of a disciplinary hearing conducted on May 7, 2013, in which the discipline hearing officer ("DHO"), Donald Tyson, found that Petitioner committed the prohibited act of destruction of government property. 28 C.F.R. § 541.3, Code 218. (Tyson Decl., Ex. 1.) The DHO found that Petitioner destroyed a television set, having a value in excess of $100, and sanctioned him with a loss of twenty-seven days of good conduct time, imposed thirty days of disciplinary segregation, and suspended commissary privileges until restitution was made. (Id.)

Petitioner asserts that his due process rights were violated when the Federal Bureau of Prisons (BOP) denied him access to video surveillance of the incident that he intended to present at his hearing and which the DHO failed to personally review. (See generally Pet., ECF No. 1 at 6-8.) Petitioner further asserts that there was insufficient evidence presented of the value of the damaged television set. (Id.)

If a constitutional violation has resulted in the loss of time credits, it affects the duration of a sentence and may be remedied by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990). The Court concludes that it has subject matter jurisdiction over the petition.

### B. Jurisdiction Over the Person

28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for writ of habeas corpus under § 2241 must file the petition in the judicial

district of the Petitioner's custodian. Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). The warden of the penitentiary where a prisoner is confined constitutes the custodian who must be named in the petition, and the petition must be filed in the district of confinement. Id.; Rumsfeld v. Padilla, 542 U.S. 426, 446-47 (2004). It is sufficient if the custodian is in the territorial jurisdiction of the court at the time the petition is filed; transfer of the petitioner thereafter does not defeat personal jurisdiction that has once been properly established. Ahrens v.Clark, 335 U.S. 188, 193 (1948); Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990).

At all relevant times, Petitioner was incarcerated at the United States Penitentiary in Atwater, California (USP Atwater), which is located within the Eastern District of California. Paul Copenhaver, Warden of USP Atwater, is Petitioner's custodian and the proper respondent to this habeas action.

## II.  FACTUAL BACKGROUND

On March 31, 2013, Correctional Officer Carroll observed video surveillance of Petitioner striking and destroying a government owned television set. (Tyson Decl., Ex.1; Att. 4.) Carroll positively identified the Petitioner using the prison's video surveillance and BOPWARE system, an electronic program designed for inmate facial identification. (Id.)

Petitioner was charged with violating discipline code 218: "destroying, altering or damaging government property having a value in excess of $100." (Tyson Decl., Ex. 1; Att. 4.) Petitioner was provided an incident report on April 1, 2013; he did not comment regarding the incident. (Id.)

Petitioner appeared at the disciplinary hearing on May 7, 2013. (Tyson Decl., Ex. 1.) In his defense, Petitioner stated that he "didn't do it," and presented three witnesses who also stated that Petitioner did not hit the television set. (Id.) After considering all the relevant evidence, the DHO found that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act of destroying the television. (Id.)

Sanctions of disallowance of good conduct time, disciplinary segregation, and suspension of privileges were imposed. (Id.)

### III. PETITIONER'S CLAIMS

Petitioner raises two claims with regard to the disciplinary violation. First, he asserts that the BOP's decision to deny him access to prison video surveillance deprived him of his due process rights as he was denied the opportunity to present documentary evidence. (See Pet. at 6-8.) Second, he asserts that the BOP presented insufficient evidence of the value of the destroyed government property. (Id.)

#### A. Claim One: Denial of Access to Surveillance Video

##### 1. Petitioner's Procedural Due Process Requirements Met as He Had Opportunity to Present Evidence and Call Witnesses

Petitioner alleges that his procedural due process rights were violated when the BOP denied him access to video surveillance he intended to present at his disciplinary hearing and when the DHO failed to view the video surveillance before rendering a decision. (See Pet. at 6-7.)

When a prison disciplinary proceeding may result in the loss of good conduct time, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454-455 (1984); Wolff v. McDonnell, 418 U.S. 539, 563-567 (1974). In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455. In this case, Petitioner does not challenge whether he was provided proper notice of the hearing. He only challenges his right to present evidence and the sufficiency of the evidence presented at the hearing.

4

Prisoners have a limited procedural due process right to present evidence at discipline proceedings. Ponte v. Real, 471 U.S. 491, 499 (quoting) Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Wolff acknowledges that "the right to present evidence is basic to a fair hearing." Wolff, 418 U.S. at 566. See Bartholomew v. Watson, 665 F. 2d 915, 918 (9th Cir. 1982) (prison officials may not arbitrarily deny an inmate's request to present documentary evidence.)

The BOP determined that the surveillance video of Petitioner destroying the television set did not exist at the time of the DHO hearing. (Tyson Decl., Ex. 1; Att. 4.) As the DHO explained in his declaration, the particular surveillance system used to capture the incident in question is specifically programmed to override any unsaved footage within fourteen days of recording. (Tyson Decl. at ¶ 12.) The BOP contends that the video was not saved within the fourteen day period and was subsequently copied over by other recordings. (Id.) The fact that a surveillance video is no longer available for the DHO to review does not violate a petitioner's due process rights. Alexander v. Schleder, 790 F. Supp.2d 1179, 1187 (E.D. Cal. May 12, 2011).

In Alexander, the District Court considered a case in which the DHO declined to view videos, relying instead on reports of other officers that did in fact view the videos. Alexander, 790 F. Supp. 2d at 1187. The Court held that "[t]he DHO did not need to personally review the videotape." (Id.) The Court supported its reasoning by comparing a DHO's right to rely on "statements of adverse witnesses without Petitioner's cross-examination or confrontation" with a DHO's right to "similarly rely on the statements of a staff member regarding his review of potentially exculpatory videotape evidence." (Id.) Concluding that due process does not require a DHO to personally watch a video of an incident, the Court held that a DHO can reasonably consider video evidence by relying on the written report of another officer that did view the video.

In a footnote in Alexander, the Court acknowledged a contrary but distinguishable ruling from the 10th Circuit, on which Petitioner relies. Howard v. United States Bureau

5

of Prisons, 487 F.3d 808, 814-15 (10th Cir. 2007) (holding that an inmate's due process rights were violated by a DHO's refusal to review a videotape of the incident which might have conclusively established the inmate's innocence).

In Howard, the BOP failed to consider video that did exist at the time of the hearing, unlike the present case where video no longer existed at the time of the hearing. Howard, 487 F.3d at 814. In Howard, the BOP could not demonstrate that the officers, who the DHO relied upon to support his finding of the petitioner's guilt, had witnessed the entire incident captured on video. (Id.) As the Tenth Circuit held, if the video contained additional evidence, its review would not be cumulative, as the BOP had argued. (Id.)

In the present case, while Officer Carroll did not witness the event, he based his incident report on a review of the video, wherein he confirmed the Petitioner's identity through the BOPWARE Electronic Posted Picture Application, a database that maintains contemporaneous photographs of USP Atwater inmates for identification purposes. (Tyson Decl., Ex. 1; Att. 4.) As a result, the DHO reasonably relied on Officer Carroll's report regarding his viewing of the videotape surveillance. (Id.)

Furthermore, prison officials' errors in denying an evidentiary request are subject to harmless error review. Howard, 487 F.3d at 813 (citing Grossman v. Bruce, 447 F.3d 801 (10th Cir. 2006)); Powell v. Coughlin, 953 F.2d 744 (2nd Cir. 1991); Lee v. Kramer, WL 4507584, at *4 (E.D. Cal. October 7, 2008). Accordingly, even when prison officials error in denying evidentiary requests, the Court must deny Petitioner's request for a writ of habeas corpus if the error was "harmless." A deprivation of due process will be harmless and a habeas petition will be denied unless the error had a "substantial and injurious effect or influence in determining the [factfinder's] verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993). Petitioner must show that he was prejudiced so as to justify federal habeas relief. (Id.)

Petitioner failed to establish that the outcome of his hearing would have been different if the video surveillance had been available. Petitioner and his three inmate witnesses all made statements at the hearing that Petitioner did not hit the television. However, none of the four statements provided an alternative explanation of what the DHO would have seen had he personally viewed the video. See Stearns v. Williamson, No. 2:13-cv-00479-AA, 2013 WL 6328091, at *2 (D. Or. Dec. 4, 2013). The record supports a reasonable inference that all four were present at the time of the incident, indicating that each one could have testified as to what actually happened if it was different from the events reported by Officer Carroll. Even if the failure to provide video surveillance resulted in error, such error was harmless as Petitioner has not shown that he was prejudiced so as to justify federal habeas relief.

The BOP did not violate Petitioner's due process rights when it considered videotape evidence by relying on the reporting officer's report.

### 2. Petitioner's Substantive Due Process Requirements Met as Decision was Supported by "Some Evidence"

The decision to revoke a prisoner's good time credits need only be supported by "some evidence" even if that evidence might be characterized as meager. Hill, 472 U.S. at 445, 455. The Supreme Court in Hill stated:

> "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."

Hill, at 455-456 (citations omitted.)

The DHO's decision met the appropriate evidentiary standard in finding the Petitioner guilty of the charged offense, as the evidence relied on during Petitioner's discipline hearing satisfies the "some evidence" standard. In support of its decision, the

7

DHO relied on the statement of the reporting officer and the documentary evidence contained in the discipline packet. (Tyson Decl., Ex. 1; Att. 4.) Such evidence supported the fact that Petitioner was positively identified as the inmate who struck the television set knocking it to the floor and breaking it. (Id.) Furthermore, the fact that the DHO found the written statement of Officer Carroll more credible than the statements of the Petitioner and three inmate witnesses does not undermine a finding that "some evidence" exists. The some evidence standard is a low threshold, and will be met even when evidence to the contrary is presented.

For all of the reasons contained in the DHO's report, "some evidence" exists to support a finding that Petitioner destroyed the television set. The evidence is sufficient to meet the deferential "some evidence" standard under Hill. Petitioner is not entitled to relief under this claim.

### B.     Claim Two: Insufficient Evidence of Value of the TV

Petitioner argues that his due process rights were violated because there was insufficient evidence presented of the value of the destroyed television set. (See Pet. at 9.)

As discussed above, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455. The DHO determined that the value of the television exceeded $100. The DHO based the value upon the written statement of Officer Carroll, and later upon a price quote from Best Buy stating the television was priced at $227.99. (Tyson Decl., Ex.1; Att. 4; see also Pet. at 8.) Based on the statements of Officer Carroll and the price quote provided from Best Buy, there was some evidence that the value of the television exceeded $100. Furthermore, regardless of whether Petitioner was provided proof of the value of the television, any such error was harmless as Petitioner has not provided any argument that the television was not worth over $100. Brecht, 507 U.S. at 637.

For all of the reasons contained in the DHO's report, "some evidence" exists to

support a finding that Petitioner destroyed government property with a value in excess of $100. The evidence is sufficient to meet the deferential "some evidence" standard required under Hill.

The Court finds no due process violation with regard to the findings of the disciplinary proceeding at issue in this case. The Court recommends that the petition for writ of habeas corpus be denied.

IV.     **RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   January 28, 2015                        /s/ *Michael J. Seng*
                                                  UNITED STATES MAGISTRATE JUDGE

9